UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHKELQIM FANA,

           Petitioner,

vs.                            Case No. 3:11-cv-311-J-39JRK

SECRETARY, DOC, et al.,

           Respondents.

_____

**ORDER**

## I. STATUS

Petitioner Shkelqim Fana filed a Petition for Writ of Habeas Corpus (Petition) (Doc. 1) under 28 U.S.C. § 2254. He is represented by counsel in this proceeding. The Petition challenges a 2008 state court (Duval County) conviction for attempted second degree murder with a weapon.[1] Id. at 1. Petitioner raises fifteen main grounds for habeas relief as well as numerous sub-grounds. The Court is ever mindful of its responsibility to address each ground. Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992), Dupree v. Warden, 715 F.3d 1295, 1298 (11th Cir. 2013). Upon review, no evidentiary proceedings are required in this Court.

_____

[1] Of note, the Judgment states that the crime of conviction is attempted second degree murder with a deadly weapon, a lesser included offense. In addition, the Uniform Commitment to Custody also references a conviction for attempted second degree murder, with a deadly weapon, a lesser included offense. The Verdict, however, is for attempted second degree murder, a lesser included offense, with a jury finding that during the commission of the crime the defendant carried or had in his possession a weapon: a knife.

This cause is before the Court on Respondents' Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 16)[2] and the Exhibits to Answer to Petition for Writ of Habeas Corpus (Appendix) (Doc. 17).[3] Petitioner filed a Reply to Answer to Petition for Writ of Habeas Corpus (Doc. 23), a Motion for Oral Argument (Doc. 24),[4] a Notice of Supplemental Authority (Doc. 26), a Corrected Notice of Supplemental Authority (*Crimins* Case Cite Correction Only) (Doc. 27), a Notice of Supplemental Authority (Doc. 28), and a Notice of Supplemental Authority (Doc. 29). See Order (Doc. #8).

## II.  STANDARD OF REVIEW

This Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).  "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions." Harrington v. Richter, 131 S.Ct. 770, 784 (2011).  The exceptions are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established

_____

[2] Respondents calculate that the Petition is timely, Response at 2-6, and the Court accepts this calculation.

[3] The Court hereinafter refers to the Exhibits contained in the Appendix as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix.  Otherwise, the page number on the particular document will be referenced.

[4] Petitioner's Motion for Oral Argument (Doc. 24) is due to be denied.

federal law; or (3) the decision was based on an unreasonable determination of the facts.  Id. at 785.

There is a presumption of correctness of state courts' factual findings unless rebutted with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This presumption applies to the factual determinations of both trial and appellate courts.  See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his Petition, Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

In establishing a claim of ineffective assistance of appellate counsel, there must be a showing that appellate counsel's performance was so deficient that it fell below an objective standard of reasonableness, but also, there must be a demonstration "that but for the deficient performance, the outcome of the appeal would have been different."  Ferrell v. Hall, 640 F.3d 1199, 1236

(11th Cir. 2011) (quoting Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004)).

## IV.   EXHAUSTION AND PROCEDURAL DEFAULT

There are prerequisites to a federal habeas review.  The Court must be mindful of the doctrine of procedural default:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, supra, at 747-748, 111 S.Ct. 2546; Sykes, supra, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ----, ----, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S.Ct. 2546.

Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012).

In addition, in addressing the question of exhaustion, the Court must ask whether the claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to address the federal claim. McNair, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state-law claim." Kelley, 377 F.3d at 1343-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." Id. at 1344 (quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied, 133 S.Ct. 875 (2013).

Procedural defaults may be excused under certain circumstances. Indeed, "[a] petitioner who fails to exhaust his

- 5 -

claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." Id. at 1353 (citing Bailey v. Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999) (per curiam)). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

In order for Petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S.Ct. 2639). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir.), cert. denied, 528 U.S. 934 (1999). Of note, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez, 132 S.Ct. at 1315.

## V.  PROCEDURAL HISTORY

The record shows the following transpired.  Petitioner was charged by a second amended information with attempted first degree murder of Lorenc Bujari.  Ex. 2 at 113-14.  In pertinent part, the information reads:

> SHKELQIM FANA on or between the 25th day of March, 2000, and the 26th day of March, 2000, in the County of Duval and the State of Florida, did attempt to unlawfully kill Lorenc Bujari, a human being, by stabbing the said Lorenc Bujari with a premeditated design to effect the death of Lorenc Bujari, and during the commission of the aforementioned Attempted First Degree Murder, the said, SHKELQIM FANA carried, displayed, used, threatened to use, or attempted to use a weapon, to wit: a knife, contrary to the provisions of Sections 782.04(1)(a) and 777.04(1) and 775. 087(1)(a), Florida Statutes.

Ex. 2 at 113.

Assistant Public Defender Melina Buncome-Williams represented Petitioner, and Ms. Buncome-Williams filed a Motion to Suppress Statements, Admissions and Confessions, asserting that oral statements were obtained from Petitioner in violation of his Constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, the Florida Constitution, and Miranda v. Arizona, 384 U.S. 436 (1966).  Ex. 3 at 59-61.  The trial court conducted a hearing on the motion on July 19, 2001.  Ex. 4.  Recognizing that the state announced that it would seek to introduce only those statements made by Petitioner prior to the time he arrived at the police station, the court

addressed only those statements in its Order Denying Defendant's Motion to Suppress Statements, Admissions and Confessions.  Ex. 6 at 105.   On October 9, 2001, the court denied the motion to suppress.  Id. at 105-107.

On August 13, 2001, Petitioner filed a Motion to Dismiss the information based on the destruction of evidence by the Jacksonville Sheriff's Office.  Ex. 7.  The trial court conducted a hearing on the motion on August 23, 2001.  Ex. 8.  The trial court, on October 9, 2001, denied Petitioner's motion to dismiss the pending charge due to the failure of the Jacksonville Sheriff's Office to preserve physical evidence, finding no evidence of bad faith on the part of the police.  Ex. 10 at 103-104.

Jury selection started on October 29, 2001.  Ex. 11.  The jury trial followed on October 30, 2001.  Ex. 12.  The jury returned a verdict of guilty on attempted second degree murder, a lesser included offense.  Ex. 13.   The jury found "that during the commission of the crime the defendant carried or had in his possession a weapon, to wit: a knife."  Id.

On November 9, 2001, Petitioner filed a Motion for New Trial. Ex. 14 at 148-150.  The trial court denied the motion.  Id. at 151; Ex. 15 at 410.   The court conducted a sentencing proceeding on January 18, 2002.  Ex. 15.  The prosecutor stated the guidelines in the case ranged from seventy-eight months (6.5 years) to thirty years, asserting the probation officer miscalculated the guidelines at forty-eight months.   Id. at 411.   The Rule 3.992 Criminal

- 8 -

Punishment Code Scoresheet prepared by the prosecutor states the primary offense is attempted second degree murder with a deadly weapon, with an offense level of 9, and a score of 92 points. Ex. 17 at 157. The prosecutor scored victim injury as severe, resulting in a score of 40 points. Id. The total sentence points scored is 132 points. Id. at 157-58. Under sentence computation, the lowest permissible prison sentence in months is calculated at 78 months (6.5 years). Id. at 158. The maximum sentence is thirty years. Id. As authorized by the trial court's signature, the total sentence imposed is twenty years in state prison. Id.

At sentencing, the court noted that Petitioner was found guilty of attempted second degree murder, and the jury found he carried or had in his possession a weapon, a knife. Ex. 15 at 412. The court adjudicated Petitioner guilty of attempted second degree murder, and sentenced Petitioner to a term of twenty years in prison. Ex. 16 at 447. The January 25, 2002 Judgment is for attempted second degree murder with a deadly weapon, a lesser included offense. Ex. 17 at 152-53. The January 25, 2002 Sentence is for a prison term of twenty years. Id. at 155-56. Finally, the Uniform Commitment to Custody conviction states the conviction is attempted second degree murder, with a deadly weapon, a lesser included offense. Id. at 159.

Petitioner appealed his conviction. Ex. 18. Assistant Public Defender Carl S. McGinness represented Petitioner on direct appeal. Ex. 19. Petitioner raised one ground:

- 9 -

> The trial court erred in denying Appellant's
> Motion to Suppress Statements, Admissions, and
> Confessions, since the state failed to sustain
> its burden of proving the Defendant waived his
> **Miranda**-based rights to Counsel and to remain
> silent, thereby depriving Appellant of his
> rights under the Fifth, Sixth, and Fourteenth
> Amendments to the Constitution of the United
> States, and to Article I, Sections 2, 9, 12,
> and 16, Constitution of the State of Florida.

Ex. 19 at i.  The state answered.  Ex. 20.  The First District Court of Appeal affirmed per curiam on September 17, 2003.  Ex. 21. The mandate issued on October 3, 2003.  Id.  Petitioner petitioned for writ of certiorari, Ex. 22, and the Supreme Court of the United States denied the petition on January 12, 2004.  Ex. 23.

On November 6, 2003, pursuant to the mailbox rule, Petitioner filed a Petition for Writ of Habeas Corpus (Ineffective Assistance of Appellate Counsel) claiming ineffectiveness of appellate counsel for failing to raise the following on direct appeal: (1) trial court error in admitting into evidence an inaudible audio tape; (2) trial court error in allowing the state to use a transcript of the inaudible audio tape; (3) trial court error in denying Petitioner's motion to dismiss where the state destroyed all the evidence related to the case; (4) trial court error in allowing admission of a knife provided by a witness fifteen months after the date of the charged crime; and, (5) fundamental error in Petitioner being adjudicated for attempted second degree murder with a deadly weapon because the conviction was only for attempted second-degree murder with a weapon.  Ex. 24.

Prior to the First District Court of Appeal rendering its decision, on November 19, 2003, pursuant to the mailbox rule, Petitioner filed a Motion for Leave to Supplement Petition for Writ of Habeas Corpus Claim of Ineffective Assistance of Appellate Counsel with Additional Issue. Ex. 25. In his proposed Supplement to Petition for Writ of Habeas Corpus Raising Issue F to Claim of Ineffective Assistance of Appellate Counsel, Petitioner claims his appellate counsel was ineffective for failing to raise an issue of fundamental error based on the use of an erroneous jury instruction on self-defense (giving a forcible felony instruction when there was no separate forcible felony, negating the self-defense instruction). Id.

Before ruling on the motion for leave to supplement, the First District Court of Appeal per curiam denied the petition on December 18, 2003. Ex. 26. On December 29, 2003, pursuant to the mailbox rule, Petitioner moved for rehearing, noting that the court failed to address the motion for leave to supplement. Ex. 27. On January 12, 2004, the First District Court of Appeal denied the motion for leave to supplement. Ex. 28. Thereafter, on January 29, 2004, the First District Court of Appeal denied rehearing. Ex. 27.

Petitioner submitted a pro se Motion for Post-Conviction Relief Filed Pursuant to Fla. R. Crim. P. 3.850 on February 4, 2004, pursuant to the mailbox rule. Ex. 29. Represented by counsel, Petitioner filed an amended motion. Ex. 30. Finally, represented by his current counsel, Petitioner filed a Second

Amended Motion for Post Conviction Relief.  Ex. 31.  In ground I,
Petitioner claimed he received the ineffective assistance of trial
counsel.  Id. at 63-76.  In ground II, he claimed newly discovered
evidence which showed that Majlinda Fana coached and instructed her
son, critical witness Jurgen Fana, to give false testimony at
trial.  Id. at 76-77.  Additionally, Petitioner claimed that Bujar
Nushi and Emona Rons could attest to Majlinda Fana's affair with
Lorenc Bujari.  Id. at 76.  Also, Petitioner claimed Mr. Nushi
could testify that he observed Ms. Fana coercing Jurgen Fana to
testify falsely that he saw Petitioner take knifes from their home
on the night of the incident.  Id.

The trial court conducted an evidentiary hearing on the Second
Amended Motion for Post Conviction Relief on November 17, 2009 and
December 11, 2009.  Ex. 32.  Petitioner testified as well as the
following witnesses:  Shari Robb, Paul Daragjati, Douglas Randy
Justice, Ilie Cracium, Judith Cracium, and Thomas Bunn, Jr.  As its
only witness, the state called Melina Buncome-Williams,
Petitioner's trial counsel.

In its January 15, 2010, Order Denying Defendant's Second
Motion for Post Conviction Relief, the circuit court denied the
motion for post conviction relief.  Ex. 33.  Petitioner appealed
the trial court's decision.  Ex. 34.  Appellant's Amended Initial
Brief presented both claims, ineffective assistance of trial
counsel and newly discovered evidence.  Ex. 35.  The state filed
its Answer Brief of Appellee.  Ex. 36.  Petitioner filed a Reply

Brief.  Ex. 37.  He also filed a Motion for Oral Argument, which was denied.  Ex. 38.  The First District Court of Appeal affirmed per curiam on February 17, 2011.  Ex. 39.  The mandate issued on March 7, 2011.  Id.

## VI.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### GROUND ONE

In grounds one through seven, Petitioner raises claims of ineffective assistance of trial counsel.  Ground one is "[t]rial counsel's failure to explain plea offer with the aid of an interpreter[.]" Petition at 5 (footnote omitted).  In this ground, Petitioner claims his trial counsel was constitutionally ineffective for relaying a plea offer from the state without providing Petitioner the aid of an interpreter.  Id.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, the Court recognizes that there is a strong presumption in favor of competence.    The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).

After conducting an evidentiary hearing, the trial court denied the claim of ineffective assistance of trial counsel raised in ground one.  The court recognized the standard set forth in

Strickland for reviewing a claim of ineffective assistance of counsel.  Ex. 33 at 107-108.  The court, in substantial detail, addressed ground one, made findings of fact, and denied the claim. Id. at 101-102.

Specifically, in its Order Denying Defendant's Second Motion for Post Conviction Relief, the trial court denied this claim finding:

> Trial counsel, Melina Buncome-Williams testified at the 3.850 hearing that any and all offers from the State were relayed to the Defendant by and through an interpreter.  Ms. Buncome-Williams further stated that the Defendant was unlikely to take any offers since any plea to the substantive charges would have exposed the Defendant to deportation proceedings.  Defendant speaks English.  Defendant spoke English at the time of his arrest.  At all times material hereto, he could carry on day to day conversations with others in English.  Moreover, at the time of his arrest, the Defendant was employed as a long distance truck driver in the United States.  It is not credible to deny that such an occupation would have necessitated the ability to read and speak at least some English.  Ms. Buncome-Williams testified that she met with the Defendant in Court, in jail and also in her office.  At all attorney client discussions and meetings, Defendant had the benefit of a translator.  Further, Ms. Buncome-Williams indicated there was never a State offer of plea no contest, time served in this case that was charged as Attempted First Degree Murder.  It is hard to imagine a set of circumstances that would cause the State to make a time served disposition for charges of Attempted First Degree Murder.  In conclusion, Trial Counsel was effective in her representation of Defendant by securing the assistance of an interpreter at all critical stages of the proceedings to ensure Defendant

- 14 -

> made an informed decision regarding his
> rejection of the plea offer.

Ex. 33 at 101-102.

The trial court concluded that defense counsel was not ineffective for the reasons stated in its order. The First District Court of Appeal affirmed the trial court's decision. Ex. 39.

At the evidentiary hearing Ms. Buncome-Williams testified that there never was a plea offer from the state. Ex. 32 at 96. In addition, Petitioner never gave a defense offer to provide to the state attorney. Id. Petitioner has failed to satisfy both the performance and prejudice prongs of Strickland. Thus, Petitioner is not entitled to relief on ground one. See Response at 11-18.

Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided. Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.

Petitioner is not entitled to relief on ground one of the Petition, the claim of ineffective assistance of trial counsel. Deference under AEDPA should be given to the state courts' decisions. Petitioner raised the issue in his Rule 3.850 motion, the trial court denied the motion, and the appellate court affirmed. The state courts' adjudication of this claim is not

- 15 -

contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.

## GROUND TWO

In ground two, Petitioner raises the following issue: "[t]rial counsel failed to investigate and present evidence in support of Defendant's Motion to Dismiss[.]"   Petition at 7.   Petitioner claims that counsel's performance was deficient because she failed to interview or depose witnesses named on the property room records concerning the destruction of evidence.   <u>Id</u>. at 7-9.   The trial court, in rejecting this ground, found the following:

> Ms. Buncome-Williams fully and comprehensively investigated this case, in all areas, including regarding the destruction of evidence.  Trial counsel was able to argue the issue regarding destruction of evidence at trial in closing argument.  Further, Ms. Buncome-Williams filed and argued a pretrial Motion to Dismiss based upon destruction of evidence.  The destruction of evidence in this case was unintentional and clearly embarrassing for the State.  The State did not act in bad faith as the destruction was unintentional.  The deposition or testimony of random JSO Property Room workers would not have been probative or assisted the defense of the Defendant in this case.  The evidence was destroyed and counsel could [attack] this weakness in the State's case at the motion to dismiss and the trial.

Ex. 33 at 102-103.  The First District Court of Appeal affirmed the decision of the trial court.

At the evidentiary hearing, Petitioner's witness, private investigator Douglas R. Justice, testified that upon his

investigation of the destruction of evidence matter, he discovered

the following:

> Well, in there, we discovered that there was a letter from the State Attorney's Office to the property room requesting that certain items be released.
>
> We obtained a copy of this property notice from the State Attorney's Office, in which a Marie Horcome who was at the time at the State Attorney's Office had signed a letter indicating that certain items were to be released to Mr. Bujari, some personal items, and other items were to be held for evidence.
>
> These items that were supposedly held for evidence, were apparently subsequently destroyed prior to trial. **It appears in examining this property notice that Ms. Horcome mismarked the form itself, and then the property room officer, Tommy Bunn, misread it.**

Ex. 32 at 20-21 (emphasis added).

Upon review, the trial court, in its Order Denying Defendant's Motion to Dismiss, found that "through mis-communication and neglect, all physical evidence not released to the alleged victim was subsequently destroyed . . . ." Ex. 10 at 103-104. The court further found "there is no evidence of bad faith on the part of the police in destroying the physical evidence in this case." Id. at 104.

Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should

- 17 -

have been provided.  Petitioner failed to present any evidence of bad faith on the part of the state and the Sheriff's property room staff.  Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.  <u>See</u> Response at 18-26.

The decisions of the state courts are entitled to deference under AEDPA.  The decisions involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground two, the claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**GROUND THREE**

In his third ground, Petitioner raises another claim of ineffective assistance of counsel: "[t]rial counsel failed to request a destroyed evidence cautionary introduction [sic]." Petition at 10.  In this ground, Petitioner contends that trial counsel performed deficiently because she failed to request a cautionary instruction regarding the fact that the photographic evidence replaced the actual evidence, which had been destroyed by the state, and should be considered with caution.

Petitioner raised this claim in his post conviction motion, and the trial court denied the claim finding:

> As stated in Ground B above, the defense was able to argue in closing argument that the destruction of the knives by the State amounted in a deprivation of evidence, from the jury, that can be used to establish guilt beyond a reasonable doubt upon the Defendant. There was no need to include a jury instruction as to destroyed evidence as the Standard Jury Instructions already stated that the Jury may look to a lack of evidence as well as a conflict in the evidence. In the end, trial counsel for the Defendant was able to secure a conviction on a lesser included offense, a great benefit to the Defendant.

Ex. 33 at 103. The First District Court of Appeal affirmed this decision.

Upon review, the trial court provided the following instruction concerning evidence:

> It is to the evidence introduced in this trial and to it alone that you are to look for that proof.
>
> A reasonable doubt as to the guilt of the defendant may arise from the evidence, conflict in the evidence, or the lack of evidence.
>
> . . . .
>
> It is up to you to decide what evidence is reliable. You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in considering your verdict. You may find some of the evidence not reliable or less reliable than other evidence.

Ex. 12 at 933-34.

- 19 -

Defense counsel relied heavily on the destruction of the evidence in her closing argument. Id. at 881-82. She implored: "[y]ou could have looked at the knives and compare the fingerprints, see whether or not Mr. Bujari [sic] fingerprints were on there or was it only Mr. Fana and determine how that knife got in that office other than by Mr. Bujari taking it and putting it there." Id. at 882. She continued: "[y]ou could have been able to do all that but we can't because the property that was in the state's custody is not there. They are the only one that had access to it before the defense even had a chance." Id. at 882-83.

Concerning ground three, Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided. Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice. See Response at 26-33.

Upon review, there was no unreasonable application of clearly established law in the state court's decision to reject the Strickland ineffectiveness claim. Indeed, the decision rejecting the claim of ineffective assistance of trial counsel is entitled to deference under AEDPA. The adjudication of the state courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on

- 20 -

ground three of the Petition, the claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**GROUND FOUR**

In his fourth ground, Petitioner claims his counsel was ineffective because she "failed to compel the testimony of a critical witness[.]" Petition at 12.  Specifically, Petitioner contends that counsel should have compelled Judith Craciun to take the stand to establish that Majlinda Fana admitted to having an affair with Mr. Bujari, and to show that prior to trial, Ms. Craciun was threatened by both Ms. Fana and Mr. Bujari.  Id.

The trial court denied this claim of ineffective assistance of counsel.  The court held:

> The issue as to whether Judith Cracium [sic] could and would testify at trial was ruled on by the trial Court.  The Witness expressed reluctance to testify, however, the trial Court allowed the thorough deposition testimony to be read before the jury.  The trial Court denied a request by Ms. Buncome-Williams to clear the Courtroom and then allow Ms. Cracium [sic] to testify.  Regarding the entry of the deposition, the trial Court ruled that the entire deposition of Ms. Cracium [sic] would be read or none of the deposition testimony would be allowed.  The trial Court allowed the reading of the entire deposition of Ms. Cracium [sic] after making a finding that she was unavailable for trial.

- 21 -

Ex. 33 at 103.  The appellate court affirmed.

The trial court record shows that Ms. Buncome-Williams brought Ms. Craciun's concerns to the court's attention.  Ex. 12 at 678. Ms. Buncome-Williams first asked that the courtroom be cleared of any witnesses so that the court could address a sensitive matter. Id.  After some inquiry, the court asked if Ms. Craciun had been deposed.  Id. at 680.  Ms. Buncome-Williams responded in the affirmative.  Id. at 681.  The court said it could not provide protection as that would be in the purview of the Sheriff's Office. Id.  The court mentioned that Ms. Buncome-Williams could call Ms. Craciun as a hostile witness.  Id.  The court also noted that Ms. Craciun could be held in contempt if she refuses to testify at trial.  Id.

Later on in the proceedings, outside the presence of the jury, Ms. Craciun was sworn in by the clerk and explained to the court her fear of testifying as she felt threatened by Mr. Lorenc and the Albanian community.  Id. at 690-94.  After inquiry by the state and the defense, the court asked Ms. Craciun to take the stand, and advised her that if she refused to answer questions, he would allow the reading of her deposition.  Id. at 700.  The prosecutor asked that Ms. Craciun be held in contempt if she refused to answer questions, but the court denied that request.  Id. at 701.

Ms. Craciun took the witness stand before the jury and refused to give testimony.  Id. at 704.  The court excused Ms. Craciun.

Id.  Ms. Buncome-Williams read Ms. Craciun's deposition into the record.  Id. at 705-23.

At the evidentiary hearing, Ms. Buncome-Williams testified that she discussed with Mr. Fana as to whether the defense should call Ms. Craciun as a hostile witness.  Ex. 32 at 116-17.  Mr. Fana did not want her called as a hostile witness.  Id. at 117.  The other option was to read from her deposition.  Id.  Mr. Fana preferred that option, and Ms. Craciun's deposition was read into the record at trial.  Id. at 117-18.

Under these circumstances, counsel's performance was not deficient.  Petitioner is not entitled to relief on ground four of the Petition.  Deference under AEDPA should be given to the state court's decision, which was affirmed on appeal.  The adjudication of this claim is not contrary to or an unreasonable application of the law, or based on an unreasonable determination of the facts.  See Response at 33-39.  Ground four is due to be denied.

### GROUND FIVE

In ground five, Petitioner alleges that his "[t]rial counsel failed to object to the use of security restraints on the Defendant at trial[.]" Petition at 15.  Petitioner urges the Court to find that his counsel was ineffective for failure to object to the restraints; for failure to move in limine to preclude the state from mentioning the restraints; for failure to request that the jury not be in a position to observe Petitioner walking in the restraints; for failure to request that he not be placed in

restraints; and, for failure to object to the state's reference to the restraints during cross examination. Id. at 16.

The trial court denied Petitioner's claim and held:

> During the trial, the Defendant stated on the witness stand that he had been incarcerated for 20 months awaiting trial. In light of this statement, the State did not inappropriately inquire as to the standard issue leg restraint upon the Defendant. The issue was further probative for the State upon cross examination because the State was able to affirm that the Defendant was not injured or limping at the time of the crime. Absolutely no prejudice would have come to the Defendant due to limited questioning as to the leg brace when the Defendant has opened the door and the questioning was inherently probative as to possible self defense.

Ex. 33 at 104. The First District Court of Appeal affirmed the decision of the trial court.

Petitioner testified at the evidentiary hearing that he was placed in a leg brace for trial. Ex. 32 at 60. The brace was strapped on his leg, underneath his pants. Id. It could not be seen under his pants. Id. at 61. He was required to walk from the defense table to take the witness stand, and the leg brace caused him to walk with a limp. Id. Petitioner attested that his counsel never raised the issue of the leg brace. Id.

At the evidentiary hearing, Ms. Buncome-Williams testified that when Petitioner approached the witness stand, he was limping. Id. at 102. She said she noticed "a slight limp[.]" Id. at 103. She concluded that this was not prejudicial to him. Id. When asked about her failure to object to the prosecutor asking

- 24 -

Petitioner about whether "that brace on your leg is part of your jail security[,]" Ms. Buncome-Williams said it was not highly objectionable in this case. Id. at 122-23.

Of importance, the United States Constitution does not permit the state "to use visible shackles routinely in the guilt phase of a criminal trial." Deck v. Missouri, 544 U.S. 622, 626 (2005). Indeed, shackles are permitted during the guilt phase "only in the presence of a special need." Id. Since there is a presumption that a defendant is innocent until proven guilty, it follows that "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process." Id. at 630 (citation omitted). Additionally, it is important to maintain the dignity and decorum of the courtroom and to allow for ready communication between the accused and his counsel. Id. at 631.

But, it is also recognized that criminal trials are not conducted in a "crystalline palace," and often, security measures must be taken to ensure the safety and security of the judge, the lawyers, the jury and courtroom personnel. Allen v. Montgomery, 728 F.2d 1409, 1413 (11th Cir. 1984). See United States v. Mayes, 158 F.3d 1215, 1225 (11th Cir. 1998) (finding the decision to restrain the defendants with leg irons reasonable, based on a careful and informed decision), cert. denied, 525 U.S. 1185 (1999); Zygadlo v. Wainwright, 720 F.2d 1221, 1223 (11th Cir. 1983) (noting the previous escape attempt of the defendant, the court entering upon the record the reasons for the decision to shackle the legs of

the defendant, and the opportunity given to defense counsel to enter objections outside the presence of the jury), cert. denied, 466 U.S. 941 (1984).

If, however, the jury could not see the shackles or restraints, "there can be no prejudice." Moon v. Head, 285 F.3d 1301, 1317 (11th Cir. 2002), cert. denied, 537 U.S. 1124 (2003). Since the chief concern is to preserve the presumption of innocence and to avoid "portraying the defendant as a bad or dangerous person[,]" an incidental viewing by the jury of a defendant in restraints is not necessarily prejudicial. Gates v. Zant, 863 F.2d 1492, 1501 (11th Cir.) (per curiam), cert. denied, 493 U.S. 945 (1989). A possible momentary, chance sighting of the accused in restraints does not necessarily nullify the presumption of innocence. United States v. Govereh, No. 1:07-CR-131-JEC, 2010 WL 28565, at *10-11 (N.D. Ga. Jan. 5, 2010) (not reported in F.Supp.2d), aff'd by 423 F. App'x 861 (11th Cir. 2011) (finding the claim that the jurors, during voir dire, may have momentarily seen the defendant in restraints was mooted by the trial stipulation that the defendant had been in custody since his arrest). In sum, there needs to be a showing of actual prejudice.

The instant case does not contain any proceeding or other record explaining why Petitioner was restrained in a leg brace for trial or who actually made the decision that Petitioner should be restrained for trial. See Response at 39 n.10 (asserting the leg brace "was a standard courtroom security device"); Ex. 33 at 104

- 26 -

("standard issue leg restraint").  <u>See</u> <u>Taylor v. State</u>, 848 So.2d 448, 449 (Fla. 4th DCA 2003) (referencing an initial shackling decision made by the sheriff, but noting the defendant's failure to preserve the shackling issue by not requesting an inquiry on the necessity of shackling).  When the shackling for trial issue has been preserved, "in the absence of record support for the restraint," it has been considered to be reversible error.  <u>Green v. State</u>, 850 So.2d 597, 598 (Fla. 4th DCA 2003).  <u>See</u> <u>Shelton v. State</u>, 831 So.2d 806, 807 (Fla. 4th DCA 2002) (reversing, finding no acceptable factual basis for the trial judge's discretionary decision to shackle the defendant for trial).

Based on the trial record, Petitioner testified that after being taken to the police station he continued to stay in jail for twenty or twenty-eight months.  Ex. 12 at 778.  Apparently, when Petitioner took the stand to testify, he walked with a limp due to the leg brace, a security device.  Petitioner does not contend that the brace was ever visible to the jury as it was worn under his pants.  Thus, jurors may have briefly glimpsed Petitioner limping as he walked to the witness stand.  At that point, even if a selected juror saw Petitioner walk with a limp to the witness stand, there was no evidence presented that the limp was related to the charged event.

The Court is troubled, however, by the fact that on cross, the prosecutor asked Petitioner, without objection: "Mr. Fana, I noticed when you were walking from the defense table up to the

juror box you had a limp.  You have a brace on your leg?"  <u>Id</u>. at
782.  Petitioner responded in the affirmative.  <u>Id</u>. at 783.  He
confirmed that he did not have a limp on the night of the incident
and he did not receive any injuries that night to cause the limp.
<u>Id</u>.  Later on, in response to other questions by the prosecutor
about a knife being found in his car and whether he was asserting
that the police put the knife in the car, Petitioner said he did
not know the answer to the question, relating again that he had
been in prison for twenty months.  <u>Id</u>. at 803.  The prosecutor,
again without objection, asked more pointed questions about the leg
brace:

> Q    While we are speaking about being in
> prison for 20 months, **that brace on your leg
> is part of your jail security**?
>
> A    (Through interpreter.)  Yes.  I am
> arrested.  I am isolated and I still don't
> know why I am so isolated.
>
> Q    But the brace on you leg is for jail
> reasons, right?
>
> A    (Through interpreter.)  Yes.

<u>Id</u>. at 803 (emphasis added).

Under these circumstances, Petitioner's counsel's performance
may have been deficient for failing to object to the use of a leg
brace, particularly when the leg brace caused Petitioner to visibly
limp as he walked and it was known that Petitioner was going to
have to walk from the defense table to take the stand during the
trial.  More importantly, there is no record of an informed

decision being made by the trial court that there were sufficient security reasons for Petitioner to be placed in a leg brace for trial.  In addition, counsel's performance may have been deficient in failing to object to the prosecutor's inquiry about the leg brace and it being implemented as part of "jail security," perhaps suggesting Petitioner was dangerous or a flight risk.  However, the Court need not reach the performance prong of the Strickland test because Petitioner has failed to satisfy the prejudice prong of the Strickland test.  Petitioner must "show that the outcome of his trial would have been different if counsel had objected to the use of the restraints." Martin v. Sec'y, DOC, 347 F. App'x 485, 494 (11th Cir. 2009) (per curiam) (recognizing that counsel's performance may have been deficient for failing to object to the use of a stun belt, but nevertheless finding that prejudice had not been shown), cert. denied, 131 S.Ct. 130 (2010).

Petitioner has failed to meet the second prong of Strickland, the prejudice prong.  He has failed to show that the outcome of his trial would have been different if counsel had objected to the use of the leg brace or the prosecutor's questions about the leg brace. See Stagg v. Sec'y, Dep't of Corr., No 5:12-cv-194-RS-EMT, 2013 WL 6184058, at *26 (N.D. Fla. Nov. 26, 2013) (citing Wrinkles v. Buss, 537 F.3d 804, 823 (7th Cir. 2008) (finding petitioner was not entitled to habeas relief because he failed to demonstrate prejudice from counsel's failure to challenge use of a stun belt during a criminal trial)).

In the instant case, the record shows that the leg brace was never visible to the jury. Apparently, Petitioner never complained to counsel that the leg brace limited his ability to confer with counsel or his interpreter in any way, and Petitioner never told his counsel he was reluctant to take the witness stand due to the leg brace. Furthermore, Petitioner readily stated on direct that he was in jail and had been in jail since the night of his arrest. Therefore, the jury was well-aware that Petitioner was in custody at the time of trial based on Petitioner's statements. Under these circumstances, the outcome of the trial would not have been different if counsel had objected to the use of the leg brace or the prosecutor's questions about the leg brace.

Upon review, there was no unreasonable application of clearly established law in the state court's decision to reject the Strickland ineffectiveness claim. The trial court found there was no prejudice to Petitioner. Ex. 33 at 104. Indeed, the decisions of the state trial and appellate courts are entitled to deference under AEDPA. The adjudications of the state courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground five, the claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## GROUND SIX

In his sixth ground of ineffective assistance of trial counsel, Petitioner claims his trial counsel was ineffective for failure to object to errors, including (A) failure to object to comments during voir dire; (B) failure to object to hearsay regarding a critical fact; (C) failure to object to hearsay documents and witness interpretation; and (D) failure to object to improper closing arguments.  Petition at 18-22.

With regard to the claim that counsel failed to object to comments during voir dire resulting in the deficient performance of counsel (ground 6(A)), the trial court concluded:

> The statements objected to by the defense as to being possibly improper were raised by the State due to the State wishing to clarify issues as to the law.  The State may inquire as to issues regarding the law.  The defense would have learned as much, or more, from the questions offered at jury selection by the State.  Therefore the questions offered by the State would have been beneficial to the Defendant, as well as the State, as to learning more about the venire.

Ex. 33 at 104.

With respect to Petitioner's claim that he received the ineffective assistance of counsel at trial for failure to object to hearsay regarding a critical fact (ground 6(B)), the trial court rejected this claim and held:

- 31 -

> This ground seeks to argue that Majlinda Fana offered hearsay. Majlinda Fana could testify as to what she observed and her understanding of that. Rather, Majlinda Fana was able to observe the physical reaction, as well as words offered, by her son when presented with the knives in question. Simply, Majlinda Fana did not offer an out of Court statement but rather an observation.

Id.

The trial court also denied Petitioner's claim of ineffective assistance of counsel for counsel's failure to object to hearsay documents and witness interpretation (ground 6(C)). The court said:

> The Defendant argues that the calling of the Custodian of Records of the Property Room as to the destruction of evidence amounted to hearsay. The Court notes it was wholly appropriate for the State to call Mr. Reagor [sic] properly offered evidence in his capacity as a Custodian of Records for the Jacksonville Sheriff's Office Property Room. The Defendant cites to Crawford which, clearly, became law three years after the trial in this case. Also, this would not be a Crawford issue as it has nothing to do with confrontation of an accuser.

Id. at 105.

Finally, the trial court denied the claim of ineffective assistance of counsel for failure to object to improper closing argument by the prosecutor (ground 6(D)). The court addressed this claim in detail. It held:

> The Defendant alleges that the defense attorney was ineffective due to an alleged failure to object to (alleged) improper statements by the State at trial. The closing arguments made by the State in this case were

wholly proper and did not rise to the level of
requiring a defense objection.  The objection
as to, ". . . we know whose blood it is", is a
rhetorical device and a fair comment on the
testimony of the Victim and other evidence in
the case.  Defendant has failed to show how
the outcome of the trial would have been
different but for the statements of the
prosecutor.  State v. Shriver, 801 So.2d 158
(2d DCA 2001).  A mistrial is appropriate
"only where the error is so prejudicial as to
vitiate the entire trial", Anderson v. State,
28 Fla. L. Weekly (Fla. Jan. 16, 2003) (citing
Hamilton v. State, 703 So.2d 1038 (Fla. 1997),
Duest v. State, 462 So.2d 446).  Furthermore,
the standard for review of prosecutorial
misconduct is whether "the error committed was
so prejudicial as to vitiate the entire
trial."  Cobb v. State, 376 So.2d 230, 232
(Fla. 1979); Jones v. State, 612 So.2d 1370
(Fla. 1993); State v. Murray, 443 So.2d 955
(Fla. 1984).  The comments also must be
examined by the Court collectively, rather
than in isolation, to determine whether the
cumulative effect deprived the Defendant of a
fair trial.  Anderson, citing Card v. State,
803 So.2d 613 (Fla. 2001).  The statements
which the Defendant states are allegedly
improper must be viewed in the context of the
whole, not in part.  See also United States v.
Young, 105 S.Ct. 1038, 1048.

    The statements by the State in this case
during closing argument were not prejudicial
but rather fair comments on the facts and law
of the case and direct inferences which could
be derived therefrom.  When viewed in light of
the evidence, in the case the statements are
fair argument for the jury made during closing
argument.

    All of the disputed phrases were proper.
Cf. Mitchell v. State, 771 So.2d 596, 597-8
(Fla. 3d DCA 2000) (holding the trial court
properly overruled defense objection to the
prosecutor's rhetorical questions during
closing-- "[W]here is the evidence in this
case of crooked cops?" [and] "The evidence in
this case is uncontroverted, [etc.]"--as fair

> comment on the testimony of the police officers and fair response to the defense position); <u>Johnson v. State</u>, 858 So.2d 1274, 1276-77 (Fla. 3d DCA 2003) (concluding that prosecutor's points in rebuttal "simply pointed out that, given the facts at hand, it was unlikely either that the officers' testimony concerning the recitation of events surrounding Johnson's admissions were untrue or that Johnson had been coerced as the defense suggested"); <u>Rimmer v. State</u>, 825 So.2d 304, 324 (Fla. 2002), <em>cert. den.</em>, 537 U.S. 1034 (2002) (finding the prosecutor's "do the right thing" comments, made in opening and closing, to be improper; but "not so erroneous" to be fundamental error, "as long as they are coupled with references to the evidence in the record").

<u>Id</u>. at 105-106.

The First District Court of Appeal affirmed the trial court's denial of the claim of ineffective assistance of trial counsel. Thus, there is a qualifying decision under AEDPA.

**Ground 6(A)**

With respect to ground 6(A),[5] the Court is convinced that Petitioner has not established prejudice, as required by the second prong of <u>Strickland</u>. Petitioner simply complains that counsel was ineffective for failing to object to the state telling the jury panel during voir dire that the evidence was "accidentally destroyed" and "it got lost." Although the terminology used by the

---

[5] Respondents contend ground 6(A) is procedurally barred. Response at 46-53. Since the trial court addressed the merits of the claim, and the appellate court per curiam affirmed the trial court's decision, the Court will give AEDPA deference to the state court determination on this ground.

state certainly did not explain that the property room employee misinterpreted a state attorney's letter and destroyed property that should have been maintained for trial, the state, at trial, immediately explained that the property was destroyed, not lost. Indeed, in the state's opening statement, the state admitted to the destruction of the evidence, explaining:

> Now the evidence technician took pictures of the knives at the scene. She submitted those knives into property and approximately a month after the victim was released from the hospital his personal belongings were released to him, and **the property room seeing that release letter just destroyed everything** but you do have pictures of the knives.

Ex. 12 at 231 (emphasis added). In addition, at trial, Sergeant B. D. Reagor testified that the property was destroyed based on a state attorney letter releasing some property and retaining some property, with a check mark on the form next to "[t]his office has no further need for the property held." Id. at 657.

In closing, defense counsel took advantage of her opportunity to blame the Sheriff's Office for failing to do its duty to maintain the evidence in its custody and for destroying the evidence before it could be tested. Id. at 881. Defense counsel said the only explanation for the destruction of the evidence was the property room employee misreading a state attorney's property notice allowing the release of some of the property. Id. at 881-82. Instead of releasing some of the property, everything was destroyed by the property room employee. Id. at 882. Ultimately,

defense counsel blamed the state for failure to maintain custody of the seized property, property which would have aided the jury in its decision-making.  Id. at 882-83.

The adjudication of this claim of ineffective assistance of counsel was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Ground 6(A) of the Petition does not warrant habeas relief.

**Ground 6(B)**

With respect to ground 6(B),[6] Petitioner has failed to establish deficient performance or prejudice.  Petitioner complains that counsel failed to object to hearsay regarding a critical fact. He states that counsel failed to object to Majlinda Fana's testimony that Jurgen Fana recognized the knives in the photos as coming from their home.  The record shows that instead of objecting to this testimony, defense counsel asked additional questions of Ms. Fana concerning Jurgen's recognition of the knives.  Ex. 12 at 601.  This was a matter of reasoned strategy under the circumstances presented.  An explanation follows.

---

[6] Respondents contend ground 6(B) is procedurally barred. Response at 57-59.  Since the trial court addressed the merits of the claim, and the appellate court per curiam affirmed the trial court's decision, the Court will give AEDPA deference to the state court determination on this ground.

At trial, prior to Majlinda Fana's testimony, Jurgen Fana testified on direct that he recognized the knives in the photographs as "[o]ur old house knives." Id. at 246. On cross, defense counsel asked if Jurgen remembered someone from the State Attorney's Office coming to his school with photographs of the knives, and Jurgen telling that individual that he did not recognize the knives. Id. at 258. Jurgen responded in the affirmative. Id. He explained that he did not recognize them because they were bent. Id. During closing argument, defense counsel attacked Jurgen's credibility, pointing out the inconsistency of his trial testimony with his prior statement that he did not recognize the knives in the photographs. Id. at 870-71.

Petitioner is not entitled to relief on ground 6(B) of the Petition, the claim of ineffective assistance of trial counsel. Deference, under AEDPA, should be given to the state court's decision. Petitioner appealed to the First District Court of Appeal, and the appellate court affirmed. The state courts' adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.

**Ground 6(C)**

Next, the Court will address ground 6(C),[7] Petitioner's claim of ineffective assistance of trial counsel based on counsel's failure to object to hearsay documents and witness interpretation. This claim has no merit. The trial court determined prior to trial that there was no bad faith on the part of the property room officers with regard to the destruction of evidence. Ex. 10 at 104. Officer Reagor was called by the state as the custodian of records for the Jacksonville Sheriff's Office property room. Defense counsel was allowed to present testimony concerning the destruction of physical evidence, id. In her closing argument, defense counsel complained about the destruction of the evidence, and she explained how the destruction of evidence hampered the defense.

In light of all the circumstances, defense counsel's performance was not outside the wide range of professional competence. Furthermore, Petitioner has failed to satisfy the prejudice prong of Strickland. Upon review, there was no unreasonable application of clearly established law in the state court's decision to reject the Strickland ineffectiveness claim. The decision was not contrary to clearly established federal law and was not based on an unreasonable determination of the facts.

---

[7] Respondents contend ground 6(C) is procedurally barred. Response at 61-64. The trial court addressed the merits of the claim, and the appellate court per curiam affirmed the trial court's decision. Therefore, the Court will give AEDPA deference to the state court determination on this ground.

**Ground 6(D)**

Finally, the Court will address ground 6(D). Petitioner contends that counsel's failure to object to improper closing arguments amounted to ineffective assistance of counsel. Beginning with the strong presumption that counsel's conduct was reasonable, "and that presumption is even stronger when we examine the performance of experienced counsel[,]" Walls v. Buss, 658 F.3d 1274, 1279 (11th Cir. 2011) (per curiam) (citing Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc)), cert. denied, 132 S.Ct. 2121 (2012), Petitioner has not shown ineffective assistance of counsel.

Not only is the state court's ruling entitled to deference, this Court must give double deferential judicial review to the state court's decision. See Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision."), cert. denied, 544 U.S. 982 (2005).

After the evidentiary hearing, the trial court credited Ms. Buncome-Williams' testimony as both more credible and more persuasive. Ex. 33 at 109. She testified that she did not feel it necessary to object to the prosecutor's statement in closing argument about whose blood was there and she did not want to give

credence to some of the state's argument concerning Ms. Craciun not taking the stand by objecting to it.  Ex. 32 at 129-30.

Even though counsel did not object to some of the prosecutor's comments, her actions did not result in Petitioner being subjected to an unfair trial.  In addressing claims of prosecutorial misconduct, the Eleventh Circuit has said:

> We will reverse a defendant's conviction on the basis of prosecutorial misconduct only where the prosecutor's "remarks (1) were improper and (2) prejudiced the defendant's substantive rights." United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998); see also United States v. Abraham, 386 F.3d 1033, 1036 (11th Cir. 2004) (explaining that prosecutorial misconduct requires a reversal of a defendant's conviction only where the defendant's substantial rights were prejudiced "in the context of the entire trial in light of any curative instruction"). A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the prosecutor's statements, the outcome of the trial would have been different. See United States v. Hall, 47 F.3d 1091, 1098 (11th Cir. 1995).

United States v. O'Keefe, 461 F.3d 1338, 1350 (11th Cir. 2006), cert. denied, 549 U.S. 1232 (2007).

If improper comments come in, Petitioner must still show substantial prejudice.  Id. at 1350.  The court would have to conclude, to grant relief, that "but for the government's improper remarks, the trial outcome would be different." Id.  Moreover, the court's instructions may remedy "any likely prejudice caused by the improper comments."  Id.  These instructions may include general

instructions prior to argument and/or specific instructions after an objection. Finally, any improper statements should be considered in the context of the entire trial.

At the beginning of the trial, the court instructed the jury that the statements of the attorneys are not to be considered as evidence in the case. Ex. 12 at 218. It is noteworthy that the trial judge instructed the jury before closing arguments that the statements and arguments of the attorneys were not evidence. Id. at 840; see Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations omitted) (stating that "jurors are presumed to follow the court's instructions."), cert. denied, 534 U.S. 1085 (2002).

The comments, when considered in the context of the entire proceeding, did not render the proceeding fundamentally unfair. Even without an objection and a curative instruction, there was no substantial prejudice as the court had previously instructed the jury that the statements and arguments of the attorneys were not evidence.

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim of ineffective assistance of counsel were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See Response at

71-74.  Accordingly, Petitioner is not entitled to relief on the basis of ground 6(D).

### GROUND SEVEN

In his seventh ground, labeled improper jury instructions, Petition at 23, Petitioner raises three claims of ineffective assistance of counsel.  He first claims his counsel was ineffective for failing to request a jury instruction on "use of a weapon" (ground 7(A)).  Id. at 24.  Petitioner then claims his counsel was ineffective for failing to object to a jury instruction which negated his claim of justification/self defense (ground 7(B)).  Id. at 24-26.  In his third claim, he alleges counsel was ineffective for "[t]he cumulative effect" of her actions or inactions, as detailed in the claim (ground 7(C)).  Id. at 26 n.2.

The trial court denied Petitioner's claim of ineffective assistance of counsel for failure to insist on proper jury instructions in its Order Denying Defendant's Second Motion for Post Conviction Relief.  The court concluded:

> The Standard Jury Instructions, as approved by the Supreme Court of Florida, were provided to the jury in this case.  In this case, the model jury instructions were followed when instructing the jury and counsel cannot be termed ineffective for failing to object to a standard jury instruction which has not been invalidated at the time of a defendant's sentencing.  Thompson v. State, 759 So.2d 650, 665 (Fla. 2000).  The failure to object to a jury instruction, which is later found to be improper is not ineffective assistance.  Thomas v. State, 838 So.2d 535 (Fla. 2003).

Ex. 33 at 106-107.  The First District Court of Appeal affirmed per curiam.

**Ground 7(A)**

With respect to ground 7(A), deference, under AEDPA, should be given to the state court decisions.  Petitioner appealed to the First District Court of Appeal, and the appellate court affirmed. The state courts' adjudication of this claim is not contrary to or an unreasonable application of the law, or based on an unreasonable determination of the facts.

In the alternative, the Court finds this claim has no merit. As noted by Respondents, Response at 76, the trial court instructed: "[d]angerous weapon is any weapon that, taken into account the manner in which it is used, is likely to produce death or great bodily harm."  Ex. 12 at 923.  Therefore, some instruction "on weapons use" was given to the jury.  See Petition at 23.  Under these circumstances, counsel's performance was not deficient. Moreover, the record does not establish that the outcome of the proceeding would have been different had counsel raised an objection to the lack of a more specific "use of a weapon" instruction.  Thus, Petitioner is not entitled to habeas corpus relief on ground 7(A).

**Ground 7(B)**

Ground 7(B) presents a more troubling claim of ineffective assistance of trial counsel.  In this ground, Petitioner alleges

that trial counsel was ineffective in failing to object to a jury instruction which negated his justification/self defense claim. Petition at 24.  Petitioner raised this claim in his motion for post conviction relief, and the trial court rejected the claim finding the standard jury instructions were given, and counsel's performance was not deficient for failing to object since the instruction had not been invalidated at the time of Petitioner's sentencing.  Ex. 33 at 106-107.  The appellate court affirmed this decision.  Thus, there are qualifying state court decisions from both the state circuit and appellate courts.  This Court must next consider the "contrary to" and "unreasonable application" components of the statute.  "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, Petitioner is entitled to relief on the basis of ground 7(B).

Petitioner relies heavily upon the case Giles v. State, 831 So.2d 1263, 1264 (Fla. 4th DCA 2002) to support his claim.  In Giles, the defendant was convicted of aggravated battery. Id.  The

jury was instructed on both justifiable use of deadly and non-deadly force. Id. The Fourth District Court of Appeal found that, over defense objection, the trial court included a misleading instruction, the forcible felony instruction: "The use of force not likely to cause death or great bodily harm is not justifiable if you find that the defendant was attempting to commit, committing or escaping after the commission of an aggravated battery." Id. at 1265. The appellate court found that the instruction was confusing and misleading. Id. (citation omitted). The court further found that the "instruction was misleading and confusing such that the effect was to negate Giles' only defense to the charge of aggravated battery." Id. (citing Davis v. State, 804 So.2d 400, 404 (Fla. 4th DCA 2001) (concluding it is **fundamental error** to given an inaccurate and misleading instruction which negates the sole defense in the case) (emphasis added); Harris v. State, 570 So.2d 397, 399 (Fla. 3d DCA 1990) (also recognizing that it is fundamental to give a complete and accurate instruction in order not to negate the theory of defense)).

Petitioner also relies on Stoute v. State, 987 So.2d 748, 749 (Fla. 4th DCA 2008). In Stoute, the defendant was convicted of attempted second degree murder. Id. Stoute claimed his counsel was ineffective for failing to object to the forcible felony jury instruction. After an evidentiary hearing on his post conviction motion, the court denied his request for relief. The Fourth

District Court of Appeal reversed finding the forcible felony jury instruction inapplicable and ultimately deprived the defendant of his theory of self defense.

The Fourth District Court of Appeal thoroughly explained:

> The forcible felony defense instruction is based on section 776.041(1), Florida Statutes (2000), which provides that the use of force in self defense is not available to a person who "is attempting to commit, committing, or escaping after the commission of, a forcible felony...." As we explained in Giles v. State, 831 So.2d 1263, 1265 (Fla. 4th DCA 2002), a jury should be instructed on this statute only "where the accused is charged with at least two criminal acts, the act for which the accused is claiming self defense and a separate forcible felony." In the present case appellant was charged with one crime, the shooting, and no other forcible felony.
>
> The state persuaded the trial court that, because our opinion in Giles issued after appellant's trial took place, trial counsel should not be held ineffective for failing to anticipate a change in the law. See Johnson v. State, 903 So.2d 888 (Fla. 2005). It does not follow, however, that because Giles was decided after the trial in this case, it constituted a change in the law. The state's argument would be correct if this statute had, for example, been previously construed by this court or the Florida Supreme Court to not require a separate forcible felony; however, that was not the case here. In fact, as is apparent from Giles, prior Florida Supreme Court decisions had indicated section 776.041(1) as requiring a separate forcible felony. Perkins v. State, 576 So.2d 1310 (Fla. 1991) (cocaine trafficking was not a forcible felony so as to preclude the defense of self-defense when a killing occurred during an attempt to traffic in cocaine); Marshall v. State, 604 So.2d 799 (Fla. 1992) (self-defense not available because defendant was engaged in

the independent forcible felonies of burglary
and aggravated battery when he killed the
victim). We accordingly conclude that
counsel's performance was deficient.

Strickland v. Washington, 466 U.S. 668,
104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) requires
not only that counsel's performance be
deficient, but that the deficient performance
prejudiced the defense. In this case appellant
testified that the victim had pulled a gun
when he shot the victim, and the victim denied
that he had a gun. Although there were no
other witnesses who could confirm that the
victim did or did not have a gun, there was
corroborating testimony that the victim had
physically attacked the defendant in the past.
Because the giving of the jury instruction
erroneously negated defendant's only theory of
innocence, self defense, the prejudice prong
of ineffective assistance of counsel has been
satisfied.

Stoute v. State, 987 So.2d at 749-50.

As candidly described by Respondents, the history of the
instant case reveals that Petitioner was charged and tried only on
a single forcible felony: attempted first degree murder. Response
at 80. Also, Respondents readily admit the record shows
Petitioner's sole defense was self defense. Id. Moreover, the
court instructed the jury on the forcible felony exception to self
defense. Id. Of note, Petitioner's counsel failed to object to
the forcible felony instruction. Id. at 81.

In this regard, the Court looks to the jury instructions given
in Petitioner's trial. The court first instructed the jury about
the charge of attempted murder in the first degree and the lesser
crimes of attempted murder in the second degree and attempted

voluntary manslaughter, with the caveat that a killing that is excusable or was committed by the use of justifiable deadly force is lawful. Ex. 12 at 921. The court explained:  "The attempted killing of a human being is justifiable and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant." Id. at 922. The court then instructed on when an attempted killing of a human being is excusable. Id. at 922-23. The court instructed the jury on the elements of attempted first degree murder and the lesser crimes of attempted second degree murder and attempted voluntary manslaughter. Id. at 923-28.

Thereafter, the court instructed the jury on self defense:

> An issue in this case is whether the defendant acted in self-defense.  It is a defense to the offense with which Shkelquim [sic] Fana is charged if the injury to Lorenc Bujari resulted from the justifiable use of force likely to cause death or great bodily harm.

> The use of force likely to cause death or great bodily harm is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting, one, another's attempt to murder him or, two, any attempt to commit aggravated battery upon him.

> A person is justified in using force likely to cause death or great bodily harm if he reasonably believes that such force is necessary to prevent, one, imminent death or great bodily harm to himself or another or the imminent commission of aggravated battery upon himself or another.

However, the use of force likely to cause death or great bodily harm is not justified if you find, one, Shkelquim [sic] Fana was attempting to commit, committing, or escaping after the commission of attempted first-degree murder or two, Shkelquim [sic] Fana initially provoked the use of force against himself unless, one, the force asserted towards the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger other than using force likely to cause death or great bodily harm to Lorenc Bujari and then in good faith the defendant withdrew from physical contact with Lorenc Bujari and indicated clearly to Lorenc Bujari that he wanted to withdraw and stop the use of force likely to cause death or great bodily harm but Lorenc Bujari continued or resumed the use of force.

In deciding whether the defendant was justified in the use of force likely to cause death or great bodily harm you must judge him by the circumstances by which he was surrounded at the time the force was used.

The danger facing the defendant need not have been actual. However, to justify the use of force likely to cause death or great bodily harm, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force.  Based upon appearances, the defendant must have actually believed that the danger was real.

The defendant cannot justify the use of force likely to cause death or great bodily harm unless he used every reasonable means within his power and consistent with his own safety to avoid the danger before resorting to that force.

Id. at 928-31.

- 49 -

The jury was further instructed on the duty to retreat and the consideration of the physical abilities and capacities of the defendant and Lorenc Bujari.  Id. at 931.  With regard to self-defense, the jury was told:

> If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether or not the defendant was justified in the use of force likely to cause death or great bodily harm, you should find the defendant not guilty.
>
> However, if from the evidence you are convinced that the defendant was not justified in the use of force likely to cause death or great bodily harm, you should find him guilty if all the elements of the charge have been proved.

Id. at 931-32.

Petitioner claims, the jury, without objection by defense counsel, was improperly instructed:

> However, the use of force likely to cause death or great bodily harm is not justified if you find, one, Shkelquim [sic] Fana was attempting to commit, committing, or escaping after the commission of attempted first-degree murder[.]

Id. at 929.  The record reflects that during the charge conference, defense counsel did not object to this forcible felony instruction.  Ex. 12 at 831-32.  Indeed, defense counsel agreed to the forcible felony instruction, and defense counsel made no objection to the forcible felony jury instruction as given by the trial court.

The most glaring problem with the jury instruction in the instant case is that the instruction as given is confusing and

misleading because Petitioner was not charged with an independent forcible felony in addition to the offense for which he claimed self defense.  Thus, the jury was improperly instructed that "the very act that the defendant seeks to justify as an act of self-defense prevents that same act from being an act of self-defense." Wilson v. State, 944 So.2d 1244, 1246 (Fla. 2d DCA 2006).  In sum, defense counsel agreed to an instruction that was circular and confusing, negating Petitioner's sole defense: self defense.

As noted previously, Giles found the forcible felony instruction misleading and confusing, negating the defendant's sole defense, relying on cases recognizing that it is fundamental error to give such a misleading instruction under circumstances where it negates the only defense.  Giles, 831 So.2d at 1265 (citations omitted).  See Jackson v. State, 935 So.2d 107, 110 (Fla. 4th DCA 2006) (finding the giving of the forcible felony instruction negating the sole defense amounts to fundamental error, compelling reversal despite the lack of an objection at trial).  Stoute found that Giles was not a change in the law, as prior Florida Supreme Court decisions never construed the forcible felony defense instruction based on section 776.041(1), Fla. Stat. (2000), "to not require a separate forcible felony[.]" Stoute, 987 So.2d at 749.  Additionally, in Stoute, the court applied Strickland, and found that the prejudice prong was satisfied because the jury

instruction negated Petitioner's theory of self defense.[8]  Stoute, 987 So.2d at 749.

In the instant case, as given, the jury instructions were confusing and misleading.  Not only was the forcible felony instruction erroneous and confusing, it deprived Petitioner of his sole defense.[9]  As a result, this Court fears that the instruction virtually negated the Petitioner's claim of self defense.  By crippling the jury during its deliberations with confusing and misleading instructions, the jury was left to decide the case with, at best, confusing and misleading instructions.

Of import, this Court must apply the Strickland test to Petitioner's claim of ineffective assistance of counsel.  The Court finds that counsel was ineffective for agreeing to the jury

---

[8] The Court recognizes that in Martinez v. State, 981 So.2d 449, 457 (Fla. 2008) (per curiam), the Supreme Court of Florida found the erroneous reading of the forcible felony instruction when the defendant has not been charged with an independent forcible felony, "constitutes fundamental error" only when its reading deprives the defendant of a fair trial.  See Crimins v. State, 113 So.3d 945, 949 (Fla. 5th DCA 2013) (reversing and remanding for a new trial, finding the defendant's sole defense was self defense, and the giving of the forcible felony instruction when the court could not "conclude that the evidence of guilt was overwhelming or that the claim of self-defense was 'extremely weak[,]'" deprived the defendant of a fair trial); Permenter v. State, 978 So.2d 277, (Fla. 4th DCA 2008) (finding no reversible error because the prosecutor did not exploit the erroneous instruction in closing argument, and based on the record, the erroneous instruction did not deprive the defendant of a fair trial).

[9] Of import, during closing argument, the prosecutor pointedly attacked Petitioner's claim of self defense.  Ex. 12 at 857, 908-11.

instructions and failing to object to the confusing and misleading instructions.  There was deficient performance, and the first prong of Strickland has been met.

The harder question is whether there is prejudice.  To satisfy the second prong of the Strickland test, Petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  After reviewing the record and the jury instructions, the Court finds that the second prong of the Strickland test has been met as well.

This was a close case where the jury returned a verdict for attempted second degree murder in an attempted first degree murder case.  Although the evidence in support of Petitioner's contention that he acted in self defense was not overwhelming, Petitioner sufficiently put forth evidence that his justification might be true.  The jury instructions were not harmless, and there is a reasonable probability sufficient to undermine confidence in the outcome that if the jury had been properly instructed, without being given confusing and misleading instructions essentially negating the self defense instruction, it would have returned a "not guilty" verdict based on self defense.  Since counsel failed to object to the forcible felony jury instruction, and basically agreed to the instructions given, trial counsel was ineffective.

- 53 -

Confidence in the outcome of the proceedings has been undermined, and trial counsel's deficient performance prejudiced Petitioner. Therefore, ground 7(B) of the Petition is due to be granted, and Petitioner is entitled to habeas corpus relief on this ground.

**Ground 7(C)**

In this ground, Petitioner asserts his trial counsel was ineffective based on the cumulative errors of counsel. Although not specifically addressed as a cumulative error claim, the trial court denied all of Petitioner's claims of ineffective assistance of trial counsel in its Order Denying Defendant's Second Motion for Post Conviction Relief. The First District Court of Appeal affirmed per curiam.

The decisions of the state courts are entitled to deference under AEDPA. The adjudications of the state courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground 7(C), the claim of ineffective assistance of trial counsel based on cumulative errors, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See Response at 86-88.

- 54 -

Alternatively, this claim is due to be denied.  The cumulative deficiencies of counsel claim is without merit.  Petitioner has not shown cumulative errors of defense counsel.  At most, he has shown one error of constitutional dimension, the failure to object to an improper jury instruction or counsel's acceptance of a confusing and misleading jury instruction.  Therefore, he has presented nothing to cumulate.  Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir.), cert. denied, 531 U.S. 849 (2000) (citing Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993)).  Petitioner is not entitled to relief on the basis of this claim of ineffective assistance of counsel alleging the cumulative errors of counsel.  Furthermore, since Petitioner has shown only one error by trial counsel of constitutional dimension, the cumulative effect of any of her errors would not subject Petitioner to a constitutional violation. See id.

This Court finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim fails." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).  Therefore, Petitioner is not entitled to habeas corpus relief on ground 7(C), the cumulative errors claim, of the Petition.

**GROUND EIGHT**

In his eighth ground, Petitioner raises a claim of newly discovered evidence.  Petition at 28.  Under Florida law, in order to qualify as newly discovered evidence, Petitioner must establish the following:

> [f]irst . . . the asserted facts must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence. Second, to prompt a new trial, the newly discovered evidence must be of such nature that it would *probably* produce an acquittal on retrial.

Blanco v. State, 702 So.2d 1250, 1252 (Fla. 1997) (internal quotations omitted) (footnotes omitted).

Petitioner states that he recently discovered that Bujar Nushi, Majlinda Fana's uncle, was a witness to Majlinda Fana coercing Jurgen Fana to testify falsely that Jurgen saw Petitioner take knives from his home on the night of the incident.  Petition at 28; Ex. 32 at 65-67.  Petitioner contends that Bujar Nushi and Emona Rons, Bujar Nushi's daughter, signed affidavits attesting that Majlinda Fana and Lorenc Bujari were having an affair. Petition at 28.  Petitioner asserts this information was unknown at the time of trial, and not discoverable at the time of trial with the exercise of due diligence.  Id.  The Affidavits of Bujar Nushi and Emona Rons are in the record.  Ex. 40.  Neither of these

purported witnesses were called by Petitioner at the evidentiary hearing.

After an evidentiary hearing, the trial court rejected this ground finding:

> This Ground is denied as the Defendant presented no evidence but for two affidavits from alleged witnesses.  The Defendant has clearly failed to meet his burden as to Ground K under Strickland.

Ex. 33 at 107.  The state appellate court affirmed.

Deference, under AEDPA, should be given to the state court decisions.  Petitioner appealed to the First District Court of Appeal, and the appellate court affirmed.  The state courts' adjudication of this claim is not contrary to or an unreasonable application of the law, or based on an unreasonable determination of the facts.

In the alternative, it appears that the trial court construed this claim as an ineffective assistance of trial counsel claim; therefore, to the extent this decision is not entitled to AEDPA deference, the Court will address the merits of this claim.  Emona Rons' Affidavit states that when she moved to the United States in May, 2001, she stayed at the home of Majlinda Fana for a couple of months.  Ex. 40 at 35.  She attested that at that time, Majlinda Fana and Lorenc Bujari were having an ongoing affair.  Id.  Upon review, the time period when Ms. Rons lived with Ms. Fana was well over a year after the incident of March 25, 2000.  Therefore, her

proposed testimony is limited to the time period after the charged incident.

Bujar Nushi, in his Affidavit, attested that he moved to the United States in June, 2001, and stayed at the home of his niece, Majlinda Fana, for about a month.  Ex. 40 at 33.  He too stated that it was clear that Ms. Fana and Lorenc Bujari were having on ongoing affair.  Id.  Again, his stay at Ms. Fana's home was well over a year after the incident of March 25, 2000.  Therefore, his proposed testimony is limited to the time period after the charged incident.

With respect to the witness tampering claim, the Affidavit of Bujar Nushi does not state that "Mr. Nushi observed Majlinda Fana coerce Jurgen Fana to falsely testify that he saw Defendant take knives from his home on the night of the incident."  Petition at 28.  Instead it states that Mr. Nushi "saw Lorenc and Majlinda instructing Jurgen Fana to lie about what he saw.  I specifically remember that they told him that he must say that Majlinda and Lorenc were not having an affair, because then Majlinda might go to jail and then Jurgen would be left alone."  Ex. 40 at 33.  Again, there is no mention of Ms. Fana and Mr. Bujari encouraging Jurgen Fana to falsely testify about seeing the knives in the possession of his father, Mr. Fana.  Instead, Nushi states that Jurgen was encouraged to falsely testify about an ongoing affair between his mother and Mr. Bujari.

More importantly, there is absolutely no explanation provided by Petitioner as to why the proposed testimony of Mr. Nushi and Ms. Rons was not discoverable before trial.  Apparently, with due diligence, Petitioner could have discovered this proposed testimony as both of these individuals lived with Ms. Fana prior to the jury trial in October, 2001.  Indeed, any reasonable exercise of due diligence would have led to the discovery of these witnesses as they both lived with Ms. Fana after the incident and prior to trial.

The Court concludes that under Florida law, the above-mentioned proposed testimony does not qualify as newly discovered evidence.  It could have been discovered by the use of diligence, and the proposed testimony is not of such a nature that it would probably produce an acquittal on retrial.  See Blanco, 702 So.2d at 1252.  Petitioner is not entitled to habeas corpus relief on this claim.

In the alternative, to the extent Petitioner is attempting to raise a claim of actual innocence based on newly discovered evidence, such a claim "is not itself a freestanding claim[.]" Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir.) (per curiam), cert. denied, 133 S.Ct. 351 (2012).  See Herrera v. Collins, 506 U.S. 390, 400 (1993) (finding no federal habeas relief for freestanding, non-capital claims of actual

innocence); <u>Jordan v. Sec'y, Dep't of Corr.</u>, 485 F.3d 1351, 1356 (11th Cir.) (same holding), <u>cert</u>. <u>denied</u>, 552 U.S. 979 (2007).

## GROUND NINE

In grounds nine through fourteen, Petitioner raises claims of ineffective assistance of appellate counsel.  In his ninth ground, Petitioner contends that he received the ineffective assistance of appellate counsel for failure to raise the preserved issue of the trial court improperly admitting into evidence an inaudible tape. Petition at 30.  Petitioner raised this ground in his Petition for Writ of Habeas Corpus (Ineffective Assistance of Appellate Counsel).  Ex. 24 at 24-25.  On December 18, 2003, the First District Court of Appeal per curiam denied Petitioner's claim of ineffective assistance of appellate counsel.  Ex. 26.  The decision of the First District Court of Appeal is entitled to AEDPA deference, regardless of whether or not an explanation is provided for the reasoning behind the court's decision.  <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1254-55 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).  All that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005).  Thus, Petitioner's claim was adjudicated on the merits by the state appellate court.

Upon a thorough review of the record and the applicable law, the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Petitioner is not entitled to relief on the basis of ground nine. See Response at 98-106.

Alternatively, this claim has no merit. The record shows the following. Petitioner's counsel filed a Motion to Suppress Statements, Admissions and Confessions. Ex. 3. The trial court heard the matter on July 19, 2001. Ex. 4. Officer W. H. Nelson testified that, on recorded audiotape, he provided Petitioner with Miranda warnings and Petitioner provided statements on the tape. Id. at 21-22. Officer Nelson readily admitted that the tape was not completely audible. Id. at 22. The prosecutor played the tape for the court. Id. at 25-32. The court denied the motion to suppress. Ex. 6. The court found:

> Detective Nelson used a hand held tape recorder in an effort to record the Defendant's statements. The original tape has been destroyed. The copy that is available is of very poor quality. The Defendant was read his Miranda rights a second time while he was in the patrol car in order to have the reading of the rights on the tape. The Defendant made statements and inquiries about having a lawyer for his then pending divorce case. He did not make an unequivocal request for counsel. The Defendant did not ask to talk with his divorce

> lawyer at that time.  He agreed to talk to the
> detectives about the crime charged.

Id. at 106.

On October 30, 2001, prior to opening statements, the trial

court made this finding:

> I have heard the tape before during one of
> these hearings and that **it's not so inaudible
> that its use would deprive the defendant of
> due process** so I am reserving ruling as to
> whether the transcript comes in but the tape
> is what it is.

Ex. 12 at 205.  Thus, Petitioner's contention that the trial court

failed to make a determination as to whether the unintelligible

portions of the tape rendered the whole recording untrustworthy is

belied by the record.  See Petition at 31.

Under these circumstances, appellate counsel was not

ineffective for failing to raise this claim, and Petitioner was not

prejudiced by appellate counsel's performance.  Petitioner is not

entitled to habeas relief on ground nine.

### GROUND TEN

In ground ten, Petitioner claims the ineffective assistance of

appellate counsel for failure to raise the preserved issue of trial

court error in allowing the state to use a transcript of an audio

tape during the trial.  Petition at 33.  Petitioner raised this

ground of ineffective assistance of appellate counsel in his state

habeas petition.  Ex. 24 at 26-28.  The First District Court of

Appeal denied the petition.   Ex. 26.   This is a qualifying decision, and it is entitled to deference under AEDPA.

Petitioner contends that the trial court failed to comply with Martinez v. State, 761 So.2d 1074, 1085-86 (Fla. 2000) (per curiam) and its recommendations for addressing the use of non-evidentiary transcripts by a jury as an aid while listening to an admitted recording.   In Martinez, the Florida Supreme Court set forth some guidance for trial courts facing the situation of determining whether the jury should have the benefit of an aid in understanding a tape balanced against the danger of allowing an un-admitted transcript becoming "evidence."   Id. at 1085.   First, it was recommended that the trial court decide whether the unintelligible portions of the tape render the whole recording untrustworthy.   Id. at 1085-86.   In the instant case, the trial court did so.   Ex 12 at 205.   Next, it was recommended that the trial court exercise caution before allowing the jury to view the transcript.   The trial court did that as well.   Id. at 205-206 (citations omitted). Although the preferred approach was noted to be for the parties to stipulate as to the accuracy of the transcript, if that is not done, it was recommended that the trial court make an independent pretrial determination of the accuracy of the transcript.   Based on the record before the Court, the trial court made such a determination pretrial and at trial.   Ex. 4 at 32-33; Ex. 5 at 35-36; Ex. 12 at 201-206, 459-465.

Based on the above, appellate counsel's performance was not deficient for failing to raise a claim that the trial court erred in allowing the state to use a transcript of an audio tape during the trial. Such a claim would have been unsuccessful. Furthermore, Petitioner has not met his burden to show that the outcome of the appeal would have been different if appellate counsel had raised this claim on direct appeal.

The state court's adjudication of this claim was not contrary to or an unreasonable application of clearly established federal law, and was not an unreasonable determination of the facts in light of the evidence. Accordingly, Petitioner is not entitled to relief on the basis of ground ten of the Petition.

### GROUND ELEVEN

In ground eleven, Petitioner claims his appellate counsel was ineffective for failure to raise an issue of trial court error. Specifically, he claims that appellate counsel did not raise the issue of the trial court denying his motion to dismiss due to the state destroying all of the evidence. Petition at 36. Petitioner raised this claim of ineffective assistance of appellate counsel in his state habeas corpus petition. Ex. 24 at 29-32. He claimed the trial court reversibly erred in applying Arizona v. Youngblood, 488 U.S. 51 (1988), requiring a showing of bad faith on the part of the authorities' destruction of the evidence. Ex. 24 at 29. He also claimed that Youngblood places an impossible and unattainable

burden of showing bad faith on the part of the government officials. Ex. 24 at 31.

In a destruction of evidence case, in order to meet the standard of materiality, "the evidence must have possessed exculpatory value that was apparent before its destruction, and the defendant must be unable to obtain comparable evidence." United States v. McCray, 345 F. App'x 498, 501 (11th Cir. 2009) (per curiam) (citing United States v. Brown, 9 F.3d 907, 910 (11th Cir. 1993)), cert. denied, 559 U.S. 953 (2010). "In addition, the loss of potentially useful evidence by the government does not constitute a denial of due process unless the defendant can show that the police acted in bad faith." United States v. Brown, 9 F.3d 907, 910 (11th Cir. 1993) (per curiam) (citing Arizona v. Youngblood, 488 U.S. 51, 58 (1988) & United States v. Nabors, 707 F.2d 1294, 1297 (11th Cir. 1983)), cert. denied, 513 U.S. 852 (1994).

In the instant case, the evidence possessed potentially exculpatory value, and Petitioner was unable to obtain comparable evidence. Of course, the underlying problem is that Petitioner failed to show bad faith on the part of the property room officers in the destruction of the evidence. Thus, his motion to dismiss based on the destruction of the evidence was denied by the trial court. Ex. 10. The trial court appropriately held, relying on

United States Supreme Court precedent, that Petitioner had not shown bad faith on the part of the government:

> The Supreme Court in <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988), held that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law. This Court finds that there is no evidence of bad faith on the part of the police in destroying the physical evidence in this case. The Defendant will be allowed to present at trial testimony regarding the destruction of the physical evidence.

<u>Id</u>. at 104.

The First District Court of Appeal denied the petition alleging ineffective assistance of appellate counsel for failing to raise this issue. Ex. 26. Thus, there is a qualifying state court decision. It is entitled to deference under AEDPA. The Court finds that the state court's adjudication of this claim of ineffective assistance of appellate counsel is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. Furthermore, Petitioner has not demonstrated that but for the alleged deficient performance, the outcome of the appeal would have been different.

### GROUND TWELVE

The twelfth ground of the Petition is appellate counsel was ineffective for failure to raise the issue of trial court error in admitting a knife provided by Majlinda Fana fifteen months after the date of the charged offense. Petition at 41. In this ground,

Petitioner raises a Sixth Amendment claim asserting he received ineffective assistance of appellate counsel for failure to claim on direct appeal that the trial court committed error in admitting the knife.  Instead, appellate counsel elected to pursue one ground: the trial court reversibly erred in denying the motion to suppress statements, admissions, and confessions because the state failed to prove Petitioner waived his Miranda based rights to counsel and to remain silent, depriving Petitioner of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments.  Ex. 19 at i.

Of import, the trial court heard argument at side bar about the knife Ms. Fana alleged came from the set maintained in her kitchen.  Ex. 12 at 580.  Defense counsel objected to the time frame, prejudicial value outweighing the probative value, and the possibility of recent fabrication.  Id. at 581-82.  The trial court overruled the objection, finding "[it] will go to the weight of it and not the admissibility, so the objection is overruled."  Id. at 582.

With respect to the performance prong under Strickland, appellate counsel was not ineffective for choosing to winnow out the weaker issues to not pursue on appeal.  Julius v. Johnson, 840 F.2d 1533, 1543-44 (11th Cir.) (per curiam), cert. denied, 488 U.S. 960 (1988).  With respect to the prejudice prong, Petitioner has not demonstrated that but for the alleged deficient performance of

appellate counsel, the outcome of the appeal would have been different.

In the alternative, deference under AEDPA should be given to the state court's decision. Petitioner raised this ground in his state habeas corpus petition. Ex. 24 at 33-34. The First District Court of Appeal denied this claim of ineffective assistance of appellate counsel on its merits. Ex. 26. The adjudication of this claim is not contrary to or an unreasonable application of the law, or based on an unreasonable determination of the facts. See Response at 121-27. Ground twelve is due to be denied.

## GROUND THIRTEEN

In ground thirteen, Petitioner raises another claim of ineffective assistance of appellate counsel. He claims his appellate counsel was ineffective for failing to raise the issue of fundamental error in Petitioner being adjudicated and sentenced for attempted second degree murder with a deadly weapon when his conviction was simply for attempted second degree murder with a weapon. Petition at 43. Upon review of the record, Petitioner was charged in the Second Amended Information with attempted first degree murder with "a weapon, to wit: a knife, contrary to the provision of Sections 782.04(1)(a) and 777.04(1) and 775.087(1)(a), Florida Statutes." Ex. 2 at 113. The jury returned a verdict finding Petitioner guilty of attempted second degree murder, a lesser included offense. Ex. 13. In addition, the jury made a

special finding that "during the commission of the crime the defendant carried or had in his possession a weapon: a knife." Id.

At sentencing, the court said Petitioner was found guilty of attempted second degree murder with a weapon. Ex. 15 at 412. The court checked the verdict form, and reiterated that Petitioner was found guilty of attempted second degree murder, a lesser included offense, and the jury found he carried or had in his possession a weapon, to wit, a knife. Id. At the end of the sentencing proceeding on January 25, 2002, the court adjudicated Petitioner guilty of the offense of attempted second degree murder and sentenced Petitioner to twenty years in prison. Ex. 16 at 447. The Judgment, dated January 25, 2002, states that the crime of conviction is attempted second degree murder **with a deadly weapon**, a lesser included offense. Ex. 17 at 152 (emphasis added). The prosecutor also listed the crime of conviction as second degree murder with a deadly weapon on the Rule 3.992 Criminal Punishment Scoresheet. Id. at 157. Additionally, it is the crime listed on the Uniform Commitment to Custody. Id. at 159.

Although Respondents recognize that Petitioner's written judgment and scoresheet describe the crime as second degree murder with a deadly weapon rather than with a weapon, they urge the Court to find that it is a distinction without a difference under Florida law, citing §§ 775.087(1) and 790.001(13), Fla. Stat. (2000). Response at 132. Respondents note that second degree murder is

reclassified to a first degree felony pursuant to section 775.087, Fla. Stat., by virtue of Petitioner's use of "any weapon" during the commission of the offense.  Response at 132.  In addition, Respondents reference section 790.001(13), Fla. Stat., in which "the term 'weapon' is defined as 'any dirk, metallic nickels, sling shot, billie, tear gas gun, chemical weapon or devise, or other deadly weapon except a firearm or a common pocket knife.'" <u>Brown v. State</u>, 896 So.2d 808, 811 (Fla. 5th DCA 2005).  <u>See</u> Response at 132 (citing <u>Garcia v. State</u>, 789 So.2d 1059, 1061 (Fla. 4th DCA 2001) (noting same)).  Furthermore, Respondents contend there is no error because Petitioner's twenty-year sentence is well within the thirty-year statutory maximum for a first degree felony.  Response at 133.

Upon review, section 775.087(1) provides in relevant part:

(1) Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, or attempts to use **any weapon** or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified as follows:

. . . .

(b) In the case of a felony of the second degree, to a felony of the first degree.

<u>Gonzalez v. State</u>, 125 So.3d 373, 374 n.2 (Fla. 3d DCA 2013) (emphasis added).  In this instant case, the court instructed the

jury that a "[d]angerous weapon is any weapon that, taken into account the manner in which it is used, is likely to produce death or great bodily harm."  Ex. 12 at 923.

Florida courts have recognized that the term "dangerous weapon" is "milder" than "deadly weapon."  Brown, 896 So.2d at 810 (citing Mitchell v. State, 698 So.2d 555, 560 (Fla. 2d DCA 1997) (quoting Clemons v. State, 48 Fla. 9, 37 So. 647 (1904)). Additionally, the standard Florida jury instruction which defines the term deadly weapon states it is a deadly weapon if the weapon "is used or threatened to be used in a way likely to produce death or great bodily harm."  Brown, 896 So.2d at 810 (citing Fla. Std. Jury Instr. (Crim.) 156).  Therefore, the definitions of both dangerous weapon and deadly weapon include in some part "the manner in which the object is used during the commission of an offense." Id. at 810.

Of importance, in Houck v. State, 634 So.2d 180, 184 (Fla. 5th DCA 1994), the court certified a question of great public importance;  the meaning of the word "weapon" as used in section 775.087(1), the reclassification statute.  The court specifically noted that "Chapter 775 does not define 'weapon[.]'" Id. at 182. Electing not to resort to the definition of weapon provided in Chapter 790 (the definition Respondents' reference in their Response at 132), the court said it "must apply the common or ordinary meaning of that word." Id.  Thereafter, the Supreme Court

of Florida, in State v. Houck, 652 So.2d 359 (Fla. 1995), found that it is for the trial court to determine whether what is used in the commission of a felony is a weapon within the meaning of the statute, § 775.087, Fla. Stat. Houck, 652 So.2d at 360. In doing so, it directed the trial court to use the common or ordinary meaning of the word. Id. The Florida Supreme Court found that a weapon is ordinarily defined as an "instrument of attack or defense in combat," or a "means used to defend against or defeat another." Id. (quoting American Heritage College Dictionary, 1529 (3d ed. 1993)).

Taking into account the above, the Court will address this issue. In the instant case, Petitioner was charged with using a weapon, a knife. The court instructed the jury on the definition of a dangerous weapon. The jury found Petitioner, during the commission of the crime, carried or had in his possession a weapon, a knife. The court, at sentencing, reviewed the verdict form, and determined the jury found Petitioner guilty of attempted second degree murder, a lesser included offense, and the jury also found Petitioner carried or had in his possession a weapon, a knife. The court adjudicated Petitioner guilty of that offense. Upon considered review, the scoresheet prepared by the prosecutor, the Judgment, and the Uniform Commitment to Custody form do not conform to the jury's verdict.

With respect to the appropriate sentence, the Florida Department of Corrections recommended that Petitioner be given a sentence of ten years.[10]  Ex. 16 at 435.  On the other hand, the prosecutor recommended the maximum sentence of thirty years.  Id. at 435.  After consideration, the trial court sentenced Petitioner to twenty years in prison.  Id. at 447; Ex. 17 at 155-56, 158.

Next, this Court must ask whether appellate counsel's performance was deficient for failing to raise this issue.  Of immediate concern to this Court is the fact that the scoresheet prepared by the prosecutor and used by the court at sentencing states the crime of conviction is second degree murder with a deadly weapon.  Ex. 17 at 157-58.  It is difficult to assess how great of an impact this may have had on the trial court's consideration of the appropriate sentence.  It is quite apparent, however, that the trial court relied on this form at sentencing, as evidenced by the trial judge's signature on the scoresheet, and his decision to reject the Florida Department of Corrections' recommendation of a prison sentence of ten years.  Id.  Under these circumstances, the Court finds that appellate counsel's performance was deficient for failing to raise the issue that Petitioner was adjudicated guilty in the judgment for attempted second degree

---

[10]  Apparently, the Florida Department of Corrections' recommendation was based on consideration of the crime of conviction being attempted second degree murder with a weapon, not a deadly weapon, as the prosecutor added this terminology in his prepared scoresheet.

murder with a deadly weapon and improperly sentenced for that offense, when his conviction was actually for attempted second degree murder with a weapon.

Of course, the more difficult question is whether Petitioner was prejudiced by counsel's performance. The Court is convinced that Petitioner was prejudiced by the performance of appellate counsel in failing to raise this matter on direct appeal based on the fact that the Florida Department of Corrections recommended a sentence of ten years; the state recommended the maximum possible sentence of thirty years, apparently relying on its prepared scoresheet; and, the scoresheet prepared by the prosecutor, upon which the trial court relied at sentencing, incorrectly states that Petitioner was convicted of second degree murder with a deadly weapon. Petitioner has adequately demonstrated that but for the alleged deficient performance of appellate counsel, the outcome of the appeal would have been different. As relief, at the very least, Petitioner is entitled to correction of the Judgment and the Uniform Commitment to Custody form. Based on all of the circumstances in the record, however, this Court is convinced that Petitioner is entitled to a new sentencing hearing with a corrected scoresheet and fair and just consideration of the appropriate sentence.[11]

---

[11] The Court is also convinced that the error before the Court is more than just a scrivener's error. See Williams v. State, 29 So.3d 327, 328 (Fla. 5th DCA 2010) (per curiam) (finding the final

### GROUND FOURTEEN

In his fourteenth ground, Petitioner claims his appellate counsel was ineffective for failing to raise as fundamental error on direct appeal, the trial court's instruction of the jury on the forcible felony exception to the self defense instruction. Petition at 46. Petitioner sought leave to supplement his Petition for Writ of Habeas Corpus (Ineffective Assistance of Appellate Counsel) in his Motion for Leave to Supplement Petition for Writ of Habeas Corpus Claim of Ineffective Assistance of Appellate Counsel With Additional Issue. Ex. 25. Petitioner presented this ground in his proposed Supplement to Petition for Writ of habeas Corpus Raising Issue F to Claim of Ineffective Assistance of Appellate Counsel. Id. As noted previously, the First District Court of Appeal denied Petitioner's state habeas petition without first addressing this motion to supplement. Ex. 26. Petitioner sought rehearing, arguing that the appellate court failed to rule on his motion for leave to supplement prior to entering its decision. Ex. 27. On January 12, 2004, the appellate court denied the motion for leave to supplement. Ex. 28. Thereafter, on January 29, 2004, the

---

judgment's failure to include the phrase, "with a weapon," to be a scrivener's error in a written plea situation). Indeed, the addition of the phrase "with a deadly weapon" causes this Court grave concern, particularly when this language was used in the prosecutor's prepared scoresheet and relied upon by the trial court to determine the appropriate sentence, and then included in the Judgment and custody documents when the jury's verdict simply found the defendant carried or had in his possession a weapon, a knife.

First District Court of Appeal denied the motion for rehearing. Ex. 27.

Respondents state that upon review of the First District Court of Appeals' denial of the motion for leave to supplement petition, it is not entirely clear whether the claim was adjudicated on its merits within the meaning of 28 U.S.C. § 2254(d). Response at 136. Respondents do not contend that Petitioner's ground fourteen is procedurally defaulted. Instead, they state that, even addressing the claim on its merits, Petitioner is not entitled to habeas relief. Id.

Based on Petitioner's considered efforts to fairly present his claim of ineffective assistance of appellate counsel to the First District Court of Appeal, and based on the fact that he did so in a timely fashion, prior to the decision rendered by the First District Court of Appeal, this Court finds that Petitioner provided the state courts with "a meaningful opportunity" to address the federal claim. Thus, this claim of ineffective assistance of appellate counsel is found to be exhausted and not procedurally defaulted.

Respondents point out that Petitioner's claim is an un-preserved claim, unlike the claim in Giles. Response at 137. Of note, Petitioner's trial counsel did not object to the trial court giving the forcible felony instruction to the jury. Without such an objection, this Court must ask whether the erroneous reading of

this instruction deprived Petitioner of a fair trial, thus making it fundamental error which arguably should have been raised by appellate counsel.

In Stamer v. Sec'y, Dep't of Corr., No. 8:08-cv-2152-T-23AEP, 2011 WL 5358590, at *9 (M.D. Fla. Oct. 28, 2011) (not reported in F.Supp.2d), this Court addressed a similar claim of ineffective assistance of appellate counsel for failing to assert a claim of fundamental error based on the forcible felony self defense instruction being administered at trial. Stamer too relied on Giles, which was issued prior to the filing of Stamer's initial appeal brief. Stamer, 2013 WL 5358590, at *9. This Court distinguished Giles because of preserved error in Giles. Stamer, 2013 WL 5358590, at *9. This Court also recognized that the Florida Supreme Court's decision in Martinez teaches that the erroneous reading of the forcible felony instruction constitutes fundamental error only when it deprives the defendant of a fair trial, and Stamer never asserted the denial of a fair trial in his post conviction challenges. Stamer, 2013 WL 5358590, at *10. Thus, this Court concluded that Stamer failed to show that the state court unreasonably applied Strickland.

Now, acknowledging the ruling in Stamer, the Court will address Petitioner's claim of ineffective assistance of appellate counsel. First, this Court recognizes that Petitioner's case was in the pipeline when Giles was decided on December 18, 2002.

- 77 -

Indeed, the state's answer brief had not been filed by that date. Thus, appellate counsel could have sought leave to supplement his initial brief to raise the erroneous jury instruction claim.  Next, Petitioner specifically claimed that he was deprived of a fair trial in his post conviction challenge:  "[s]ince Mr. Fana was charged with only a single criminal act the giving of this instruction was fundamental error, see: <u>Fair v. Crosby</u>, 28 Fla. Law Weekly D2434 (Fla. 4th DCA October 22, 2003) (copy attached), and cases cited therein, **denying him a fair trial and due process**." Ex. 25, Supplement to Petition at 2 (emphasis added).  Therefore, Petitioner built the foundation for his claim of ineffective assistance of appellate counsel for failure to raise as fundamental error on direct appeal the trial court's instruction of the jury on the forcible felony exception to the self defense instruction.  By Petitioner claiming a denial of a fair trial and due process of law in his post conviction challenge, Petitioner's case is easily distinguishable from <u>Stamer</u>.

As related previously, this was a close case where the jury returned a verdict for attempted second degree murder in an attempted first degree murder case.  Again, although the evidence in support of Petitioner's contention that he acted in self defense was not overwhelming,[12] Petitioner sufficiently put forth evidence

---

[12] The Court notes that Petitioner's efforts to present his sole defense, self defense, was greatly hindered by the fact that the Sheriff's Office mistakenly destroyed the evidence in its

that his justification might be true.  The jury instructions were not harmless.  Indeed, there is a reasonable probability sufficient to undermine confidence in the outcome that if the jury had been properly instructed, without being given confusing and misleading instructions essentially negating the self defense instruction, it would have returned a "not guilty" verdict based on self defense. Under these circumstances, the erroneous reading of this instruction constitutes fundamental error because it deprived Petitioner of a fair trial.

The claim is one of ineffective assistance of appellate counsel.  The Court must apply the <u>Stickland</u>, test to Petitioner's claim raised in ground fourteen.  Doing so, the Court finds that Petitioner's appellate counsel was ineffective for failure to raise as fundamental error on direct appeal, the trial court's erroneous instruction of the jury on the forcible felony exception to the self defense instruction.  Appellate counsel's performance was so deficient that it is below the objective standard of reasonableness.  A reasonable probability sufficient to undermine confidence in the outcome has been met under the circumstances at bar.  Therefore, Petitioner has satisfied the second prong of the <u>Strickland</u> test by showing that there is a reasonable probability

---

custody before the evidence could be tested.  <u>See</u> Ex. 9, Property Storage form.  Of course, all fault lies with the government for destroying the evidence, not with Petitioner.

that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different.

**GROUND FIFTEEN**

In his fifteenth and final ground, Petitioner contends that the trial court erred in denying his Motion to Suppress Statements, Admissions, and Confessions, depriving Petitioner of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.   Petition at 48. Petitioner basis this contention on the assertion that the state failed to establish Petitioner validly waived his Miranda-based rights to remain silent and to counsel.   Id.

Pretrial, Petitioner filed a Motion to Suppress Statements, Admissions, and Confessions.   Ex. 3.   On July 19, 2001, the trial court conducted a thorough evidentiary proceeding with respect to this motion.   Ex. 4.   On September 14, 2001, the court heard argument.   Ex. 5 at 1-23.   The court entered a detailed Order Denying Defendant's Motion to Suppress Statements, Admissions, and Confessions.   Ex. 6.

First, the court noted that the state announced that it would seek to introduce only those statements made by Petitioner prior to the time he arrived at the police station.   Id. at 105.   The court related the testimony of Detective William Nelson:

> Detective William Nelson testified that he was on duty on the date of the alleged crime.   He and Detective Haberman went to the Defendant's apartment to interview him because

- 80 -

the victim had identified the Defendant as the person who had cut him.  The detectives first encountered the Defendant as the Defendant was walking from his car towards his apartment. The detectives arrested the Defendant outside of his apartment.  He was ordered to get down on the ground where he was handcuffed and he was told he was under arrest for aggravated battery.  The detectives identified themselves to the Defendant as police officers and they searched him at the time he was arrested.  All of the conversations were in English, but the Defendant used non-English words at times. The Defendant's native language is Albanian.

Prior to being questioned about the crime, the Defendant told the detectives that he knew he was going to jail and requested an opportunity to see his children.  Detective Nelson read the Defendant the <u>Miranda</u> rights in English from the standard JSO <u>Miranda</u> card. The Defendant said he understood his <u>Miranda</u> rights.  The Defendant told the detectives that he went to the victim's place of employment to kill him because the victim had been having sexual relations with the Defendant's wife.  The Defendant described taking two (2) knives with him in order to kill the victim.  He inquired of the detectives as to whether the victim was dead. The Defendant was then put in a patrol car and was not interrogated any further at that time. However, the Defendant continued to make unsolicited statements about the crime.

Detective Nelson used a hand held tape recorder in an effort to record the Defendant's statements.  The original tape has been destroyed.  The copy that is available is of very poor quality.  The Defendant was read his <u>Miranda</u> rights a second time while he was in the patrol car in order to have the reading of the rights on the on the tape.  The Defendant made statements and inquiries about having a lawyer for his then pending divorce case.  He did not make an unequivocal request for counsel.  The Defendant did not ask to talk with his divorce lawyer at that time.  He

> agreed to talk to the detectives about the
> crime charged.

Ex. 6 at 105-106.

The court described Petitioner's testimony:

> The Defendant testified through an
> interpreter at the hearing.  He testified that
> he moved to the United States in April 1997,
> three (3) years before the date of the crime
> charged in this case.  He was granted asylum
> in April 1997 and released from immigration
> detention.  He has lived and worked in the
> United States since that time.  He has worked
> as a waiter, at a bakery, at manufacturing
> plants, at a church, and as a long distance
> truck driver, jobs which require some
> understanding of English.  In addition, the
> transcript of the Defendant's testimony at a
> bond hearing (State Exhibit 4) demonstrates
> that the Defendant was able to communicate
> adequately in English during the
> interrogations in this case.  Although the
> detectives did not understand everything that
> the Defendant said and although the Defendant
> did not understand everything the detectives
> said, the Defendant's understanding of his
> rights as read to him was sufficient to enable
> him to make an intelligent and voluntary
> waiver of those rights.

Id. at 106-107.  Based on the above, the court denied the motion to

suppress.  Id. at 107.

Petitioner, through counsel, raised this issue on direct

appeal.  Ex. 19.  The First District Court of Appeal affirmed per

curiam on September 17, 2003.  Ex. 21.  The mandate issued on

October 3, 2003.  Id.

The presumption of correctness of the factual findings must be

rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

- 82 -

Here, the trial court's factual findings are amply supported by the record.  Petitioner has not overcome the presumption of correctness by clear and convincing evidence.

There is an adjudication on the merits.  Thus, under AEDPA, there is a qualifying decision by the state courts.  Deference, under AEDPA, should be given to the state court's decision. Petitioner appealed to the First District Court of Appeal, Ex. 19, and the appellate court affirmed.  Ex. 21.  The state courts' adjudication of this claim is not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts.  Petitioner is not entitled to habeas relief on ground fifteen.

## CERTIFICATE OF APPEALABILITY

If Petitioner appeals, the undersigned opines that a certificate of appealability is warranted for ground five (the claim of ineffective assistance of trial counsel for failure to object to the use of security restraints and the state's reference to security restraints), but is not warranted for the remaining grounds of the Petition which have been denied by this Court.[13] See Rule 11, Rules Governing Section 2254 Cases in the United States District Courts.  This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing

---

[13] The Court grants habeas relief with respect to grounds seven(B), thirteen, and fourteen.

- 83 -

of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability, except with respect to ground five.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   Petitioner's Motion for Oral Argument (Doc. 24) is **DENIED.**

2.   The Petition for Writ of Habeas Corpus (Doc. 1) is conditionally **GRANTED** with respect to **GROUND SEVEN(B)** (ineffective assistance of trial counsel for failure to object to a jury instruction which negated Petitioner's justification/self defense claim), **GROUND THIRTEEN** (ineffective assistance of appellate counsel for failure to raise the issue of fundamental error in Petitioner being adjudicated and sentenced for attempted second degree murder with a deadly weapon when his conviction was for attempted second degree murder with a weapon), and **GROUND FOURTEEN** (ineffective assistance of appellate counsel for failure to raise the issue of the trial court giving an erroneous jury instruction on self defense), all subject to paragraph 3.  The Petition (Doc. 1) is **DENIED with respect to the remaining grounds.**

3.   Petitioner's **conviction** is **VACATED**, and Respondents are directed to forthwith take all action necessary to ensure that the state trial court is apprised of this ruling, that trial counsel is appointed to represent Petitioner Fana, and that a new trial (or other appropriate disposition) is ordered in an expeditious fashion.

4.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

5.    The **Clerk of the Court** shall send a copy of this Order to the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida.

6.    If Petitioner appeals the denial of his Petition in pertinent part, **the Court denies a certificate of appealability, except with respect to ground five** (the claim of ineffective assistance of trial counsel for failure to object to the use of security restraints and the state's reference to security restraints).  With respect to **ground five**, the Court opines that a certificate of appealability is warranted and goes to both the performance and prejudice prong of the ineffective assistance of counsel claim raised in ground five.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of March, 2014.

_____
BRIAN J. DAVIS
United States District Judge

sa 3/5
c:
Counsel of Record
Circuit Court, Fourth Judicial Circuit